J-A19002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTINE JEFFERSON AND FRANK GONTOWSKI | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 3509 EDA 2018 |
| MICHAEL EDENZON AND RESIDENTS | : | |

Appeal from the Order Entered October 26, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 180901277

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.*

MEMORANDUM BY PANELLA, P.J.:            **FILED FEBRUARY 06, 2020**

In this appeal, we are asked to resolve the scope of an easement. The trial court ruled that the scope of the easement was controlled by a settlement agreement executed, but not recorded, by the parties' respective predecessors in interest. We conclude the scope of the easement is controlled not by the unrecorded settlement agreement, but what is provided in the recorded deeds, and therefore reverse.

Christine Jefferson and Frank Gontowski, husband and wife, ("the Gontowskis"), who reside at 328 Pemberton Street, are neighbors with Michael Edenzon and his wife, Karolina, who reside at 330 Pemberton Street. Between the houses lies an alleyway. The alley is located entirely within the 328

---

* Former Justice specially assigned to the Superior Court.

property; however, there is an easement permitting the residents of the 330 property to use the alleyway as a passageway and watercourse.

A dispute arose between the neighbors concerning the Edenzon's storage of trash in the alley. After the parties were unable to reach a consensus, the Gontowskis filed a complaint for a permanent injunction enjoining the Edenzons from storing their trash cans in the alleyway. In their complaint, the Gontowskis provided copies of their recorded easement, which stated "TOGETHER with the free and common use, right, liberty and privilege of the aforesaid alley as and for a passageway and watercourse at all times hereafter, forever." Petition for Injunctive Relief, Exhibit A, page 2.

The Edenzons asserted that their deed, which states "TOGETHER with the use of said alleys at all times hereafter forever," granted them unrestricted use of the alleyway. Answer, Exhibit B, page 2. Their argument, in part, relied on a settlement agreement executed by two former owners of the respective properties to resolve a dispute over whether both parties were entitled to a key to the alley. Although the agreement purports to be binding on successors in title, it was never formally recorded with the deed to either property. The trial court denied the permanent injunction, concluding that the settlement agreement created the easement, and therefore defined its scope based on the agreement's description.

The Gontowskis filed the instant appeal. The Gontowskis claim that the trial court erred when it denied their petition for a permanent injunction.[1] Specifically, they argue that the easement, as recorded in their deed, limits the Edenzons' use of the alleyway as a passageway and watercourse. They argue that the court erred when it expanded the use of the alleyway, based on language of an unrecorded private settlement agreement, to include storage of trash cans. Upon review, we are constrained to agree.

"When reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law." *Buffalo Twp. v. Jones*, 813 A.2d 659, 663-64 (Pa. 2002) (citations and internal quotation marks omitted). In order to establish a claim for a permanent injunction, the moving party must establish a clear right to relief. *See id.*, at 663. However, unlike a preliminary injunction, the moving party need not establish either irreparable harm or the need for immediate relief. *See id*. Instead, a court may issue permanent injunctive relief if such relief is necessary to prevent a legal wrong for which there is no adequate remedy at law. *See Soja v. Factoryville Sportsmen's Club*, 522 A.2d 1129, 1131 (Pa. Super. 1987).

---

[1] Although the Gontowskis raise three questions in their brief, all questions concern facets of their central issue that the trial court erred when it relied on the settlement agreement to define the scope of the easement, and therefore denied the permanent injunction. *See* Appellants' Brief, at 4. We have considered their three questions together as one issue.

Here, the Gontowskis' petition for a permanent injunction asserted that the Edenzons' use of the alley to store trashcans exceeded the permissible use set forth in the easement. With respect to interpretation of an easement, our scope of review is plenary. *See Amerikohl Mining Co. v. Peoples Nat. Gas Co.*, 860 A.2d 547, 550 (Pa. Super. 2004).

> The law on the interpretation of easements is clear. A right of way is an easement, which may be created by an express grant. To ascertain the nature of the easement created by an express grant we determine the intention of the parties ascertained from the language of the instrument. Such intention is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made.

> Ambiguous words are construed in favor of the grantee. Where a deed or agreement or reservation therein is obscure or ambiguous, the intention of the parties is to be ascertained in each instance not only from the language of the entire written instrument in question, but also from a consideration of the subject matter and of the surrounding circumstances.

*Id.* (citations and quotation marks omitted).

Preliminarily, we consider whether the prior settlement agreement affected the easement in any way. We note that, based on the language contained in the settlement agreement, referencing an existing easement, the settlement agreement did not create the easement in question. However, because the agreement purports to bind successors in interest, we must consider whether it modified the existing easement.

In 1998, the Edenzons' predecessor in interest, Michael DiPilla, sought to enforce the easement against the Gontowskis' predecessors in interest, the

Rickenbachs. DiPilla and the Rickenbachs settled their dispute through a mutual release and settlement agreement dated December 3, 1998 ("the Agreement").

Paragraph two of the Agreement granted DiPilla a key for the gate to the alleyway so that he could "forever use, access and enjoy the common alley and the [e]asement." After the parties mutually released each other from all claims arising from this dispute, paragraph five carves out an exception for DiPilla's claim that a deck built by the Rickenbachs interfered with his use of the alley. Paragraphs five and six both explicitly note that this claim would be enforced against the Rickenbachs' successor in interest. Paragraph nine provides that the Agreement is binding on the parties' successors in interest.

Most importantly, however, paragraph seven, entitled "No Admissions," indicates that the parties "agreed that, except for the admission that the [e]asement exists, the acceptance of the terms of this [a]greement is not … an admission on the part of the parties … of the truth, correctness or validity of any of the claims asserted by or against any of them." Therefore, it is immediately clear that the Agreement could not have created the easement.

We therefore turn to the possibility that DiPilla and the Rickenbachs sought to modify the easement through the Agreement.[2] We first note that a

_____

[2] The trial court's opinion does not address whether the Gontowskis had actual or constructive notice of the Agreement. **See Lund v. Heinrich**, 189 A.2d 581 (Pa. 1963) (affirming that a bona fide purchaser's title to land could only be affected by what they actually or constructively knew at the time of purchase).

literal reading of the Agreement would suggest that the scope of the easement was expanded in favor DiPilla personally, not as the owner of 330 Pemberton Street. Neither party advances this position, and we agree that under the circumstances, the Agreement does not evince an intent to create an easement in gross. *See Lindemuth v. Safe Harbor Water Power Corporation*, 163 A. 159, 160-161 (Pa. 1932) (instructing that a court should never presume an easement is in gross if the grant can be fairly read to be appurtenant).

Further, paragraph seven of the Agreement clearly disclaims any intent to modify the existing easement. The parties admitted only that the easement existed. They explicitly denied that any other claim was to be deemed true or correct.

We therefore cannot rely on the Agreement to determine the scope of the easement. The current parties agree that their respective deeds contain express grants of the easement. *See* Appellants' Brief, at 5-6; *see also* Appellees' Brief, at 5. Outside of this concession by both parties, it would be difficult for this Court to agree. Neither deed contains the word "easement." Nor can either deed be read in a manner that would suggest an intent to create or describe an easement.

However, given the parties' consensus, we will examine the deeds to determine the scope of the easement. Normally, "[e]asements which are created by express grants are to be construed in accordance with the

intentions of the parties, as determined from examining the agreement as a whole." ***Owens v. Holzheid***, 484 A.2d 107, 109 (Pa. Super. 1984).

Similar to the circumstances in ***Owens***, the deeds here clearly are not the origin of the easement. ***See id.***, at 111. There is no dispute over the fact that the easement is of "ancient" origin. Furthermore, as in ***Owens***, the record here does not include any document that includes language that can be construed as the origin of the easement. ***See id.***

Under these circumstances, the scope of the easement is confined to the Gontowskis' actual or constructive knowledge. ***See id.*** The Edenzons have presented no evidence of a common grantor. Therefore, unlike ***Owens***, there is nothing that establishes the Gontowskis had constructive knowledge of the language in the Edenzons' deed. ***See id***. We can reverse the trial court's order on this basis alone.

Even if we impute constructive knowledge to the Gontowskis, we conclude the appropriate scope of the easement is defined by the language in the Gontowskis' deed, not the Edenzons' deed. The Gontowskis' deed includes "the free and common use, right, liberty and privilege of the aforesaid alley as and for a passageway and watercourse at all times, hereafter, forever." Through this language, the Gontowskis had a legitimate expectation of use of the alley as a passageway and for groundwater runoff. Any use by the Edenzons that impaired these expectations exceeded the scope of the easement granted to 330 Pemberton.

Furthermore, in contrast to our conclusion regarding the Gontowskis constructive knowledge of the Edenzons' deed, we conclude the circumstances establish the Edenzons had constructive knowledge of the terms used in the Gontowskis' deed. While there is no evidence of a common grantor, there is no dispute that the alleyway is part and parcel of 328 Pemberton. As such, the Edenzons had a duty to inspect the Gontowskis' deed and its chain of title to be aware of the scope of the easement. **See Owens**, 484 A.2d at 111.

As a result, we conclude that the trial court erred in denying the Gontowskis relief. The Agreement does not define the scope of the easement. Based upon the record before us, the easement's terms are defined by the constructive knowledge of the parties. And the constructive knowledge of the parties, again based on this record, is established by the terms contained in the Gontowskis' deed.

Accordingly, we conclude that the trial court erred in not granting the permanent injunction. We therefore reverse the trial court and remand the matter in accordance with this memorandum.

Order reversed. Case remanded to trial court in accordance with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/6/20

- 8 -